"EXHIBIT A"



CORPORATION SERVICE COMPANY®

## Notice of Service of Process

JEH / ALL
Transmittal Number: 11181586
Date Processed: 05/16/2013

| | |
|---|---|
| Primary Contact: | Jeffrey McCabe<br>Ocwen Financial Corporation<br>1661 Worthington Road<br>Suite 100<br>West Palm Beach, FL 33409 |
| Entity: | Ocwen Loan Servicing, LLC<br>Entity ID Number 2122003 |
| Entity Served: | Ocwen Loan Servicing, LLC |
| Title of Action: | David Kirsten vs. Ocwen Loan Servicing, LLC |
| Document(s) Type: | Summons/Complaint |
| Nature of Action: | Contract |
| Court/Agency: | San Joaquin County Superior Court, California |
| Case/Reference No: | 39-2013-00296753-CU-DF-STK |
| Jurisdiction Served: | California |
| Date Served on CSC: | 05/16/2013 |
| Answer or Appearance Due: | 30 Days |
| Originally Served On: | CSC |
| How Served: | Personal Service |
| Sender Information: | Michael Fluetsch<br>209-367-8888 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

To avoid potential delay, please do not send your response to CSC
*CSC is SAS70 Type II certified for its Litigation Management System.*
2711 Centerville Road   Wilmington, DE 19808   (888) 690-2882   |   sop@cscinfo.com

SUM-100

# SUMMONS
*(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

OCWEN LOAN SERVICING, LLC, a Delaware limited liability company, and DOES 1 through 20, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

DAVID KIRSTEN

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (*www.sucorte.ca.gov*), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (*www.lawhelpcalifornia.org*), en el Centro de Ayuda de las Cortes de California, (*www.sucorte.ca.gov*) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

The name and address of the court is:
*(El nombre y dirección de la corte es):*
San Joaquin Superior Court, 222 E. Weber Ave., Stockton, CA 95202

**CASE NUMBER:** 39-2013-00296753-CU-DF-STK

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Michael Fluetsch, 115 W. Walnut Street, Lodi, CA 95240, Tel (209) 367-8888

DATE: MAY 0 6 2013                Clerk, by THERESA CARLETON, Deputy
*(Fecha)*                         *(Secretario)*                   *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* Ocwen Loan Servicing, LLC

under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
       ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
       ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
       ☒ other *(specify):* a Delaware limited liability company

4. ☒ by personal delivery on *(date):* 5/6/13

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courtinfo.ca.gov*

MICHAEL A. FLUETSCH (SBN 160895)
KRISTINA L. FLUETSCH (SBN 169233)
FLUETSCH & FLUETSCH
115 W. Walnut St., Ste. 3
Lodi, California 95240
Telephone (209) 367-8888
Facsimile (209) 367-8884

Attorneys for David Kirsten

THIS CASE HAS BEEN ASSIGNED TO JUDGE
BARBARA A. KRONLUND IN DEPARTMENT 11
FOR ALL PURPOSES, INCLUDING TRIAL

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

### IN AND FOR THE COUNTY OF SAN JOAQUIN

### UNLIMITED JURISDICTION

| | |
|---|---|
| DAVID KIRSTEN,<br><br>        Plaintiff,<br><br>VS<br><br>OCWEN LOAN SERVICING, LLC, a Delaware limited liability company, and DOES 1 through 20, inclusive,<br><br>        Defendants. | Case No. 39-2013-00296753-CU-DF-STK<br><br>**COMPLAINT** |

Plaintiff David Kirsten complains of defendants Ocwen Loan Servicing, LLC, and DOES 1 through 20, inclusive, and for his causes of action alleges as follows:

### GENERAL ALLEGATIONS

**A.   The Parties.**

1. Plaintiff David Kirsten is an individual residing in Lodi, San Joaquin County, California.

2. Plaintiff is informed, believes, and thereon alleges that defendant Ocwen Loan Servicing, LLC, is a limited liability company organized under the laws of the State of Delaware, and doing business in San Joaquin County, California.

3. Plaintiff does not presently know the true names and capacities of defendants sued herein under the fictitious names of DOES 1 through 20, inclusive, and will request leave to amend this Complaint to include the true names and capacities of such parties when the same have been ascertained.

4. Plaintiff is informed, believes and thereon alleges that at all times herein mentioned, all defendants, including DOES 1 through 20, inclusive, (i) were and are citizens of California, (ii) jointly perpetrated the acts herein with their co-defendants, (iii) were the successors in interest to, or agents, alter egos, principals, co-tenants, partners, joint venturers, or co-conspirators of their co-defendants in doing the things herein alleged, and (iv) were acting within the scope of their authority or in furtherance of a common scheme or design with the knowledge, permission, consent or ratification of their co-defendants in doing the things herein alleged, and therefore are liable, jointly and severally, for all damages and other relief or remedies sought by complainant in this action.

B. **The Purchase Loan.**

5. In or about December 2007, plaintiff David Kirsten purchased the improved real property at 714 North Church Street, Lodi, California (the "Property"). In order to purchase the Property obtained financing through Taylor Bean Whittaker ("TBW"). Plaintiff executed a promissory note in favor of TBW, as well as a deed of trust pledging the Property as collateral for the loan (the "Loan").

6. Plaintiff timely made all of the payments in accordance with the Loan, except for payments the loan servicers wrongfully rejected.

C.   **TBW's Bankruptcy and Delay in Processing Loan Payments.**

7.   Plaintiff is informed, believes, and thereon alleges that in or about 2009, TBW filed chapter 11 bankruptcy. Plaintiff I furthers informed, believes, and thereon alleges that the bankruptcy caused a significant disruption in TBW's processing of customers' loan payments. Although Mr. Kirsten continued to timely make all of his payments under the Loan, TBW failed to timely receive and post his payments for August 2009 and September 2009.

D.   **Cenlar's Servicing of the Loan and Erroneous Notices of Default.**

8.   Plaintiff is informed, believes, and thereon alleges that in or about 2009, Cenlar Agency, Inc. dba Central Loan Administration & Reporting ("Cenlar") took over servicing the Loan.

9.   On or about December 8, 2009, Cenlar erroneously sent a "Notice of Default" to Mr. Kirsten and his tenant at the Church Street property. The notice incorrectly stated that Mr. Kirsten had failed to timely make payments.

10.   Mr. Kirsten responded by informing Cenlar that he had, in fact, timely made all of the payments under the Loan. Mr. Kirsten also provided Cenlar documentation to verify that the payments were made. Cenlar investigated the matter and verified that he had timely made all the payments, but that the payments had not been timely processed due to TBW's bankruptcy. Cenlar acknowledged this is a letter to Mr. Kirsten dated January 15, 2010:

> Please be advised that for the property address reference above due to Taylor, Bean & Whitaker filing chapter 11 bankruptcy there has been a delay in receiving your monthly payments for August and September as a result, we made a business decision to protect your account from being reported negatively to the major credit agencies.
>
> Stops have been placed on your account to prevent credit reporting you will also not receive letters stating that your account is past due while we are awaiting payments for Taylor, Bean & Whitaker.

11. Notwithstanding Cenlar's acknowledgement that Mr. Kirsten had timely made all the payments under the Loan, on or about July 6, 2010, Cenlar sent another "Notice of Default" to Mr. Kirsten and his tenant at the Church Street property.

12. Mr. Kirsten again responded to Cenlar and provided documents to verify that the payments were made. Cenlar acknowledged this by letter dated August 12, 2010:

> We are in receipt of your recent correspondence, which included documentation verifying payments made to Taylor, Bean & Whitaker Mortgage Corp in 2009 that have not been credited to your account.

E. **Owen's Servicing of the Loan and Erroneous Notice of Default.**

13. Plaintiff is informed, believes, and thereon alleges that in or about 2010, Ocwen Loan Servicing, LLC ("Ocwen") took over servicing the loan.

14. Upon taking over the servicing of the Loan, Ocwen had an obligation to review the file it received from Cenlar. Had Ocwen reviewed the file, it should have been evident that Mr. Kirsten had timely made all of the payments. In particular, Ocwen would have seen the correspondence from Cenlar verifying that Mr. Kirsten made the August and September 2009 payments.

15. Instead, Ocwen asserted that Mr. Kirsten was in "default" on the loan because it did not have a record of his August and September 2009 payments to TBW.

16. Mr. Kirsten responded by explaining to Ocwen that he had, in fact, timely made all payments on the loan, but that the two payments had not been timely processed and/or posted to his account due to TBW's bankruptcy. Mr. Kirsten also told Ocwen that its predecessor Cenlar had already verified that he had timely made all the payments. Mr. Kirsten provided Ocwen a copy of the Cenlar's letter acknowledging that he had timely made all payments.

17. That should have resolved the issue. Indeed, on February 16, 2011, Ocwen sent Mr. Kirsten a letter acknowledging "payment . . . to the prior servicer of the above referenced

loan might not have been posted to the account prior to the transfer to Ocwen". However, Ocwen's letter went on to say that in order to resolve the matter, Mr. Kirsten would have to provide Ocwen all sorts of documentation and information.

18. It should not have been Mr. Kirsten's burden to establish (again) that he made the payments. Nevertheless, on February 20, 2011, Mr. Kirsten provided Ocwen all the requested documentation and information. Mr. Kirsten noted this was the third time he had provided the materials to the loan servicers.

19. Ocwen responded by again acknowledging that Mr. Kirsten had, in fact, made all the payments on the Loan. On February 23, 2011, Ocwen sent Mr. Kirsten a letter saying it had "fully researched" his account and "based on our findings, we have determined that the payment in question has since been received and applied to your loan."

20. However, the very next month, Ocwen again reported the Loan as "past due" because it did not have a record of the August and September 2009 payments. This was extremely frustrating to Mr. Kristen. On the one hand, te loan services, including Ocwen, repeatedly acknowledged that Mr. Kirsten had timely made all the payments; but on the other hand Ocwen continued to report that payments had *not* been made and therefore the Loan was "past due." Mr. Kristen spent countless hours on the telephone trying to resolve the issue, and getting shuffled around from one Ocwen representative to another.

21. On March 31, 2011, Ocwen sent Mr. Kirsten a letter again incorrectly claiming the Loan was "past due" because the August and September 2009 payments were never made. Ocwen's letter states in pertinent part:

> **Concern #1:** You believe that you have been remitting payments on the loan to prior servicer / us and expressed concern regarding the past due status of the loan.
>
> **Response:** We acquired the servicing rights of the loan on December 20, 2010, from Central Loan Administration and Reporting (CENLAR), with the loan due for the September 1, 2010 payment.

> A further review of the payment history of the loan with CENLAR indicates that they acquired the servicing rights of the loan in August 2009, with the loan due for the August 1, 2009, payment. Please note that no payments were posted to the loan by them in the months of August 2009 and September 2009.
>
> The last payment received and applied by them to the loan was on December 1, 2010, in the amount of $1,200.00, which satisfied the August 1, 2010 payment. Enclosed is the prior servicer (CENLAR) payment history, which reflects all the credit and disbursements made on the loan by them, and the resulting loan status.
>
> Our records indicate that we received payments of $1,000.00 each on February 9, 2011, February 24, 2011 and March 17, 2011, on the loan. These payments were utilized to satisfy the September 1, 2010 through November 2010 payments due on the loan. An account statement dated March 17, 2011, has been sent to your attention reflecting the loan next due for the December 1, 2010 payment.

22. It is clear from Ocwen's letter dated March 31, 2011, that it failed to recognize that the August and September 2009 payments had been made, despite the fact that both Cenlar and Ocwen previously acknowledged that Mr. Kirsten did make those payments but the payments were not credited to his account. Ocwen's letter demonstrates either a lack of diligence in reviewing the matter or a willful disregard for the facts.

23. Based on Ocwen's faulty assumption that Mr. Kirsten did not make the August and September 2009 payments, Ocwen has (i) declared him to be "delinquent" on the loan, (ii) improperly assessed late fees and other charges, which make it appear he is even more delinquent, (iii) recorded one or more "Notice of Default", and (iv) falsely reported negative information about him to Equifax, Trans Union, Experian and Innovis. All of this has had a significant adverse affect on Mr. Kirsten's credit and caused him substantial damages.

24. Furthermore, Ocwen has exacerbated the problem by rejecting Mr. Kirsten's payments on the ground that the loan is in "default" (which it isn't), so it cannot accept payment of the regular installments, but can only accept payment of the full (incorrect) amount to reinstate the loan.

25. Mr. Kirsten made numerous attempts to resolve this matter, but Ocwen has failed to communicate with him. Mr. Kirsten has sent numerous letters, which Ocwen has simply failed to respond to. And Mr. Kirsten has scheduled numerous meetings with the "relationship manager" assigned to his account, only to have the Ocwen representatives fail to appear. It is obvious that Ocwen has not made any good faith efforts to resolve this matter.

26. Since Ocwen wouldn't make any genuine effort to resolve the situation and appeared determined to proceed with the wrongful foreclosure, which would have resulted in the loss of Mr. Kirsten's property and further destroyed his credit history, he took action to mitigate his damages. Although Mr. Kirsten clearly did not owe any "delinquent" amount, he paid the alleged amount to Ocwen to stop the foreclosure. Thereafter, on or about April 16, 2012 Ocwen recorded a "Rescission of Notice of Default and Election to Sell under Deed of Trust". This stopped the foreclosure and mitigated Mr. Kirsten's damages, but the erroneous recording of the "Notice of Default" still left the false impression that Mr. Kirsten had been in "default" and that foreclosure proceedings had been initiated against him.

27. Furthermore, Ocwen continues to report the Loan as "past due" and has made no efforts to correct Mr. Kristen's credit history.

F. **Ocwen Has Ingored, For More Than a Year, Demands For Corrective Action.**

28. On or about May 11, 2012, Mr. Kirsten, through his attorney, sent Ocwen a letter demanding that Ocwen confirm in writing that (i) Mr. Kirsten has timely made all of the payments under the loan, (ii) Mr. Kirsten is not now, nor has he ever been, "delinquent" on his obligations under the loan, (iii) the "Notice of Default" was recorded in error, and (iv) Ocwen has not recorded a "Notice of Trustee's Sale" and there are no foreclosure proceedings pending relative this loan. In addition, Mr. Kirsten, through his attorney, demanded that Ocwen notify each of the credit reporting agencies Equifax, Trans Union, Experian and Innovis that the

negative information Ocwen previously reported about Mr. Kirsten is false and request that they withdraw such information from his credit report. Mr. Kirsten, through his attorney, also requested that Ocwen provide a letter addressed "To Whom It May Concern" with the same information, which Mr. Kirsten can show prospective creditors. In light of the serious harm to Mr. Kirsten's credit occasioned by Ocwen's repeated errors, Mr. Kirsten's request was exceedingly reasonable.

29. For more than a year, Ocwen has failed and refused to provide the requested letter, notify the credit reporting agencies of the erroneous information, or take any steps whatsoever to remedy the situation. Ocwen has not even responded to Mr. Kirsten or his attorney.

## FIRST CAUSE OF ACTION

### (Slander of Title)

30. Plaintiff hereby incorporates by reference paragraphs 1 through 29, inclusive, as though set forth fully herein.

31. On or about March 2, 2012, defendants recorded in the Official Records for the County of San Joaquin a document entitled "Notice of Default and Election to Sell under Deed of Trust", which falsely stated that plaintiff was in "default" of the Loan and that the defendants were foreclosing against plaintiff's improved real property at 714 North Church Street, Lodi, California.

32. The defendants' recording of the document entitled "Notice of Default and Election to Sell under Deed of Trust" created a cloud on title to the plaintiff's Property.

33. The defendants' recording of the document entitled "Notice of Default and Election to Sell under Deed of Trust" constituted slander of title because in fact plaintiff was not in "default" of the Loan and defendants had no right to foreclose against his Property.

34. As a direct and proximate result of the defendants' slander of title, plaintiff has been damaged in an amount to be proved at trial within the jurisdictional limits of this Court.

35. Plaintiff is informed, believes, and thereon alleges that defendants engaged in the foregoing acts and conduct with the intent to deprive plaintiffs of property or legal rights or to otherwise cause him injury. Such conduct was intentional, wrongful, malicious and despicable and carried out with a willful and conscious disregard for plaintiff's rights. Accordingly, damages should be awarded against defendants for the sake of example and by way of punishing them in an amount to be proved at trial within the jurisdictional limits of this Court.

## SECOND CAUSE OF ACTION

### (Defamation)

36. Plaintiff hereby incorporates by reference paragraphs 1 through 35, inclusive, as though set forth fully herein.

37. Plaintiff is informed, believes, and thereon alleges that defendant regularly and routinely furnishes information about consumers to the credit reporting agencies.

38. Plaintiff is informed, believes, and thereon alleges that in or about 2012, defendant reported information about plaintiff to the credit reporting agencies, including but not limited to Equifax, Trans Union, Experian and Innovis. Specifically, defendant reported that plaintiff was in "default" and/or "delinquent" on the Loan, and that the Loan was "past due".

39. At the time defendant reported the negative credit information about plaintiff, defendant knew the information was false, and that in fact plaintiff had timely made all payments under the Loan.

40. On several occasions, including on or about May 11, 2012, Plaintiff notified defendant that the information defendant submitted to the credit reporting agencies was

1  inaccurate and requested that defendant provide the credit reporting agencies the correct information.

41. Plaintiff is informed, believes, and thereon alleges that defendant failed and refused to reinvestigate the disputed information.

42. Plaintiff is informed, believes, and thereon alleges that defendant failed and refused to provide the credit reporting agencies the correct information.

43. As a direct and proximate result of the defendants' defamation, plaintiff has been damaged in an amount to be proved at trial within the jurisdictional limits of this Court.

44. Plaintiff is informed, believes, and thereon alleges that defendants engaged in the foregoing acts and conduct with the intent to deprive plaintiffs of property or legal rights or to otherwise cause him injury. Such conduct was intentional, wrongful, malicious and despicable and carried out with a willful and conscious disregard for plaintiff's rights. Accordingly, damages should be awarded against defendants for the sake of example and by way of punishing them in an amount to be proved at trial within the jurisdictional limits of this Court.

### THIRD CAUSE OF ACTION

(Unfair Credit Reporting)

45. Plaintiff hereby incorporates by reference paragraphs 1 through 44, inclusive, as though set forth fully herein.

46. Plaintiff is informed, believes, and thereon alleges that Ocwen, in the normal course of its business, regularly reports information about borrowers to the credit reporting agencies.

47. Plaintiff is informed, believes, and thereon alleges that at various times in 2010, 2011, 2012 and 2013, Ocwen reported to the credit reporting agencies, including but not limited Equifax, Trans Union, Experian and Innovis, negative credit information about plaintiff.

Specifically, plaintiff is informed, believes, and thereon alleges that defendant reported that plaintiff was in "default" and/or "delinquent" on the Loan, and/or that the Loan was "past due".

48. The negative credit information that defendant reported to the credit reporting agencies about plaintiff was false. In fact, plaintiff was not in "default" or "delinquent" and the Loan was not "past due". Plaintiff is informed, believes, and thereon alleges that defendant knew or should have known the information was false at the time it reported to the credit reporting agencies.

49. Plaintiff repeatedly informed defendant that the information was false and demanded that defendant retract the erroneous information and take other steps to remedy the situation, but defendant failed and refused.

50. As a direct and proximate result of the defendants' unfair credit reporting, plaintiff has been damaged in an amount to be proved at trial within the jurisdictional limits of this Court.

51. Plaintiff is informed, believes, and thereon alleges that defendants engaged in the foregoing acts and conduct with the intent to deprive plaintiffs of property or legal rights or to otherwise cause him injury. Such conduct was intentional, wrongful, malicious and despicable and carried out with a willful and conscious disregard for plaintiff's rights. Accordingly, damages should be awarded against defendants for the sake of example and by way of punishing them in an amount to be proved at trial within the jurisdictional limits of this Court.

///

WHEREFORE, Plaintiff prays for judgment as follows:

1. For compensatory damages;
2. For general damages;
3. For punitive damages;
4. For attorney's fees according to proof;
4. For costs of suit incurred herein;
5. For such other and further relief as to the court deems just and proper.

Dated: 5/6/13

FLUETSCH & FLUETSCH

By: /s/ Michael Fluetsch
Michael Fluetsch
Attorneys for Plaintiff David Kirsten